Gaston, J.
 

 We are of opinion that none of the grounds taken in support of the demurrer in this case can be sustained.
 

 It has been insisted, that if the lands, which are the subject of this controversy, have teen devised to the wardens, either as individuals designated by that description, or as a corporate body in our law, the case is one purely legal, and furnishes no matter for the cognizance of a Court of Equity; and,'on the other hand, if the devise be one to the poor of the county, it is utterly w>:d, because of its indefinitencss. We hold it to’ be clear, that the devise was not
 
 *218
 
 made to individuals, characterized by the description of war-' ^ens Poor) nor can we construe the devise as one made to the wardens in their corporate or quasi,corporate capacity To give the devise the first of these contractions, would be not only to depart from the language of the will, but to violate the obvious intent of the testator, that the subject matter of the devise “ should be under the direction of the persons who should from time to time be the trustees or managers of the poor.” Nor will the language of the will warrant the exposition, that the lands are given to the wardens in their political capacity. As has been well remarked in the argument in behalf of the information, the gift is not to the wardens of the poor, but “to the poor, oi the county of Beaufort,” and it is of lands of' which the testator declares “that they shall never be sold" but be held as a stock belonging to.the poor of the county of Beaufort,” and “subject to be rented, cultivated or leased, as the wardens or managers of the poor may deem most advisable.” In his contemplation, the gift is to the poor — the property is to be the property of the poor, subject to a power in “the wardens or managers” to make the property beneficent to the poor. Besides, had the devise been directly made to the wardens in their political capacity, it must have failed, because in that capacity they had not the ability to take by devise. There is no ground, therefore, for the objection that
 
 here
 
 was a plain remedy at law. It is true, as insisted by the counsel for the defendant, that as a direct devise to the poor of the county of Beaufort, the devise cannot have effect. “ The poor of a county,” as defined by our laws making provision for their care, maintenance and support, are a fluctuating body, consisting of those, who, from time to time, because of age, infirmity or calamity, are unable to subsist of themselves, and are therefore declared the subjects of a public charge. It is to this fluctuating body the testator would fain give these lands; but as the law has not conferred on it an artificial character, which renders it able to take donations, the gift, as a direct gift, cannot have effect.
 

 But it by no means follows, that the
 
 purpose
 
 of the testator’s disposition shall therefore be frustrated. The lands, in
 
 *219
 
 deed, for want of capacity in “ the poor of the County” to take, descended to the heirs at law of 'the testator; but the declaration of the testator that‘they shall be held for the poor of the county of Beaufort, to ’be rented, leased or cultivated for them, raises a charitable use or trust, which the law recognizes as good, and which will be established and enforced by the competent authority. It is unnecessary to enquire in this case, whether the "jurisdiction exercised by the Courts of Chancery in England in establishing a definite charity, where the conveyance or devise was defective, because of the want of proper persons to take in succession, had its rise after the Statute of Elizabeth, or was settled before that statute, upon principles introduced into the English jurisprudence. from the civil law. There can be no doubt but that it was the constant practice of that court, before the colonization of America, and so continued down to the Revolution, to enforce such charitable dispositions. They were hot permitted to fail because of the want of a trustee, and, in analogy to the rule of Equity in other cases, the person, on whom the legal estate devolved, was declared in Equity a trustee
 
 pro hac vice.
 
 There can be no reason to doubt but that the jurisdiction of the Court of Chancery in this State, while yet a colony, was modelled after, and regu. lated by, the rules of the Court of Chancery in the mother country; and by the act of 1782, establishing Courts of Equity in this State, it was declared, that they should possess all the powers and authorities that “the Court of Chancery, which was formerly held in this State under the late govern ment, used and exercised, and that are properly and rightfully incident to such a court, agreeably to the laws in force in this State, and not inconsistent with our constitution.” The Statute of Elizabeth was avowedly passed to redress the misemployment of lands, goods and stocks of money
 
 theretofore
 
 given to certain charitable uses, though the mode of redress directed was, by its enactments, made to apply to subsequent dispositions for such uses. This statute was in force in this State (see
 
 Haywood
 
 v
 
 Craven's
 
 Ex'rs, 2 Law Rep. 557, and
 
 Griffin
 
 v
 
 Graham,
 
 2 Hawks 96) and so remained until it was superseded by our act concerning charities (Re
 
 *220
 
 vised Stat. ch. 18) which was passed expressly for the same purpose, viz. to secpre the faithful management of all property, real or personal, which had been or thereafter should be granted by deed, will or otherwise, for such charitable purposes as were allowed by law. The English Statute in its recital enumerated many different sorts of gifts theretofore made, where the things so given had not been “employed according to the charitable intent of the givers and founders thereof, by reason of frauds, breaches of trust and negligence in those that should pay, deliver and employ the same;” and this enumeration in the statute was afterward often resorted to by the courts, to aid them in ascertaining, whether the intent, to which subsequent dispositions of property were made, should be regarded as equally
 
 charitable
 
 with that recognised as charitable by their statute. Our act, considering that what was a charitable intent or purpose, had then been well ascertained, instead of an enumeration of charitable purposes, used the comprehensive term “such charitable purposes as are allowed by law.” There can b.e no question but that a gift to or for “.the poor of a county’’ is such. The statute and-the act are important, as regards the present enquiry,
 
 only
 
 because they declare the public will, that such purposes are good purposes and ought to be protected and upheld. We confine our decision to the case of a charity, where the objects thereof are definite, ns they are in the case before us, “the poor of (he county of Beaufort.” In such a case we cannot doubt that a Court of Equity, in the exercise of a plain jurisdiction, will establish the charity and make the necessary decrees for causing it to be executed. Where the gift is to charity merely — or to unde* fined purposes of charity — whether a Court of Equity has then a power to interfere and to select the charity, opens a field of enquiry info which we shall not enter until the occasion may demand it. The charge in the information, that the defendant entered upon these lands, claiming them as the heir at law of the testator, is sufficiently explicit, and the demurrer admits it for the present. If he have any other claim, or if he be not the heir at law, it is competent for ,h,im to allege such a matter in his answer. The objection
 
 *221
 
 that the declared trust would establish a perpetuity, and is therefore forbidden by our constitution, is untenable. The perpetuities thereby contemplated are estates settled for
 
 -private uses,
 
 so as to be unalienable.
 
 Griffin
 
 v
 
 Graham, ut supra.
 
 This is a public charity.
 

 The decree below must be reversed with costs, the demurrer overruled, and the cause remanded for further proceedings.
 

 Per CuRiam, Ordered accordingly.