## PAINE v. FORNEY.

(Filed May 14, 1901.)

WILLS—*Construction—Bequest to Charity.*

> A provision in a will that a church is to be built from certain funds will not fail because there is not sufficient amount of the funds to build a church as large as directed by the testator.

DOUGLAS, J., dissenting.

ACTION by J. A. Paine, John Paine, Hester Paine, Laura Vann (wife of Jim Vann), Beckey Vann (wife of Wesley Vann), Jonas Paine, Mary Paine, Robert Paine, Dallas Jones, Ervin Jones, Manda (wife of Ervin Martin), Siss Meadows (wife of Vess Meadows), Laura Meadows (wife of Bege Meadows), John Paine, Joe Paine, Bill Paine, Sarah Ledford (wife of Van Ledford), Margaret Bradley (wife of Richard Bradley), Mary Wilson (wife of Dick Wilson), B. J. Norris, Nancy Norris, O. A. Norris, Mary Graves, Eliza Seeble (wife of M. W. Seeble), and others, against Mary Forney (executrix of H. A. Forney, deceased, and Isaac E. Paine, deceased), Robert A. Smith, John T. Puntch, J. P. Sifford, M. W. Robinson, and V. P. Asbury (trustees of Marvin M. E. Church, South), A. Lee Cherry (Worship-

ful Master), and William Little (Secretary of Rock Spring Lodge, No. 341, A. F. and A. M.), heard by Judge *E. W. Timberlake* at December (Special) Term, 1900, of LINCOLN County Superior Court. From a judgment for plaintiffs, defendants appealed.

*Jones & Tillett,* for the plaintiffs.
*D. W. Robinson,* for the defendants.

MONTGOMERY, J. The testator provided in his last will and testament that a large portion of his estate should be converted by his executors into money to constitute what he designated the "General Fund." Item 9 of the will is in these words:

"I will and devise that the General Fund herein provided for in the several items of his will shall be applied as follows: To the building of a church and school-house on the land belonging to the congregation worshipping at Marvin Church, of the Methodist Episcopal Church, South, on which my family vault and graves are situated. The building to be built out of stone, to be nicely dressed and pencilled, by some good architect and mechanic; but to be plain and substantial, and of convenient size, as the condition of the General Fund in the hands of my executors may justify. The said building to be about sixty feet long by forty feet wide, two stories high, the first story to be about fourteen feet high, with four or five windows on each side, and two at the ends where the pulpit is located, with pulpit and good benches therein, and to be used for a church by the said congregation. The upper story to be about ten feet high and arched overhead on the rafters, the size of the windows and doors to correspond in architectural design to the size of the building. The said building to cost about two thousand dollars, and to be paid for out of the General Fund in the hands of my executors, as heretofore provided, and my executors to contract

for and receive the said building when the contract has been complied with by the contracting party or parties, and pay for the same out of the fund aforesaid: *Provided,* the trustees of the congregation worshipping at Marvin Church, of the Methodist Episcopal Church, South, will give the site and allow the said building to be built."

In the tenth clause of the will the testator declared that the remainder of the general fund left after the payment of all the expenses of the building provided for in the ninth clause, should be kept by the executors and the interest thereon to be expended for the "use and benefit of the said congregation, in keeping up my family vault and graves and the graveyard in connection therewith, and the building erected for the use of a church and school, and for the support of the Gospel of Christ so long as the said congregation exists." Provisos were added to the effect that if the congregation should become extinct or refuse the gift, then the general fund should be given to the Masonic Order, of which he was a member, under the same conditions and requirements as characterized the gift to the church.

It was admitted on all sides that the building contemplated and provided for in the ninth item of the will could not be built of stone if the entire estate of the testator should be used for that purpose; that a substantial church and schoolhouse of wood of the dimensions mentioned in the will would cost $1,350; that the cost of the same in brick would be $2,650; that the whole value of the estate available for, and constituting the general fund, was $4,000; and that there is, and was, at the testator's death, upon the site of the church a wooden edifice used for the purpose of worship.

The question for decision is, Is item 9 of the will inoperative by reason of the fact that the funds, set apart for the erection of the church and school building, as it is described in that item, are insufficient for that purpose?

The plaintiffs, who are the heirs-at-law and next of kin to the testator, bring this action against the executors and trustees of the church and the officers of the Masonic Lodge, alleging that sections 9 and 10 of the will are inoperative, and that they are therefore entitled to the possession of the property which constitutes the general fund. The contention of the plaintiffs is that, as it is admitted that it is impossible to erect and furnish such a building as is described in the will with the amount of $2,000 mentioned by the testator as the probable cost of the same, or even with the whole of the estate, the bequest for that purpose must fail, and that the amount of the general fund must therefore be paid over to the plaintiffs, as the testator's heirs-at-law, the testator having died intestate as to that fund.

The defendants' contention is that, while it is admitted that a church and school-house of the size and material specified in the will can not be built with the amount given in the will for that purpose, or even with all the property of the estate , yet a good, substantial church of wood or brick of the size and dimensions mentioned in the will can be erected with the amount donated for that purpose, and that that should be done in order that the leading intent and prime object of the testator may be carried out.

It is to be observed, in passing, that the defendants, the trustees of the church, in their answer do not manifest a very great desire to assume the responsibilities of the bequest. They do not tender to the executors the lot upon which the church might be built, or offer, for the church, to furnish such additional money as might, added to the amount of the bequest, be sufficient to build and furnish such a church building as the testator desired to have constructed. They did not, in so many words, decline the gift, and that is about all that can be said for the answer. It may be that they had the conviction that a structure of wood or brick

could not be substituted for the one provided in the will—one of stone—and only made that as a suggestion in the answer that the Court might decide upon the rights and duties of all concerned.

It seems clear to us that the leading and primary intent of the testator was to build such a church and school-house combined as would furnish a convenient place of worship for the congregation of Marvin Church and a convenient school for the neighborhood, the school to be under the control of the church, and to have the family cemetery protected and cared for. But at the same time the material of the building was intended by him to be hewn stone, and the manner in which the stone was to be worked, so particularly set out in the will, goes to show that no other character of building was in his mind; and we can not substitute therefor brick or wood. But the exact size and dimensions of the building were not absolutely determined by the testator. He said it must be "plain and substantial, and of convenient size, as the condition of the general fund in the hands of my executors may justify," to be "about sixty feet long by forty feet wide, two stories high," etc. Neither did the testator intend that the cost of the building should be limited to $2,000. He said it was to cost about $2,000, but in the opening words of the bequest he declared that the general fund was to be applied to the building of the church and school.

We think, therefore, that the whole of the general fund can be applied to the erection of a building of hewn stone, although the building may not be as large as sixty feet long by forty feet wide, provided such a building, when completed, would be of convenient size—that is, large enough to furnish sufficiency of room for the usual congregation of Marvin Church to worship in, and for such school purposes as the church government may adopt. There was no finding of

any such fact by the Court below, nor was such a fact admitted by the parties. If there had been, our judgment in this case would have been as above intimated.

As the testator's intention is a laudable one, and private gifts for religious and educational purposes are to be encouraged by the Courts in all cases where it is possible, we will remand this case to the end that it may be determined, either by the verdict of the jury or the findings of fact by the Court by the consent of the parties, whether a church and school building can be constructed of hewn stone of sufficient size and dimensions and suitable as to finish, for the purposes of church worship and church school, with the amount of the general fund.

The defendants, the church trustees, should pay the costs of this appeal.

Remanded.

DOUGLAS, J., dissenting. I can not assent to the judgment of the Court that the church trustees should pay the costs of this appeal. In fact, they are about the last persons that should pay it. They were not the original actors. They have not brought any suit for the money in controversy, but were apparently made parties to an action originally brought by the heirs-at-law and next of kin against the executrix. The opinion of the Court intimates that these trustees do not want the money—"That they did not in so many words decline the gift, and that is about all that can be said for the answer." Suppose they had declined the gift, could we make them accept it? or impose any penalty for their refusing to do so? The defendants appealed, but whether these trustees or the executrix were the active appellants, I do not know. The result of the appeal is the remanding of the case to see if in some way the money can not be given to the trustees on such terms as will carry out the in-

tention of the testator. To this extent their appeal, if it is their appeal, has been successful. Then why should they pay the costs? The action has arisen over the impossibility of strictly carrying out the wishes of the testator, who stipulated for more than his money's worth. I think under all the circumstances that the costs should be paid out of the fund.