WACHOVIA BANKING AND TRUST COMPANY, EXECUTOR OF J. C. TISE, v.
MARY G. OGBURN ET AL.

(Filed 11 May, 1921.)

**1. Evidence—Questions of Law—Trials—Trusts—Uses.**

Where the validity of an item in a will devising lands to be held in
trust for certain purposes is resisted upon the grounds of insufficient
available funds for the purpose and the indefiniteness of the benefici-
aries, etc., the construction is one of law when the facts are not dis-
puted, and an instruction to the jury to find the issue in the affirmative,
if the jury believe the evidence, is held to be without error under the
facts of this case.

**2. Trusts—Uses—Charitable Uses—Equity—Courts.**

A devise in trust of 300 acres of land used for years by the testator
as a summer resort, in this case known as the Vade Mecum Springs,
leaving it to the judgment of the trustee to develop it by suitable roads,
to build a commodious and permanent auditorium for educational, reli-
gious and scientific, medical and other worthy organizations, and to
develop the property "into not only a watering resort, but an institution
after the order of a chautauqua," is held to be for charitable purposes
and sufficiently definite as to the beneficiaries, and of stated purpose,
to be carried out by the trustee, under the equitable jurisdiction of the
courts when circumstances should hereafter require it, and the objection
urged that the scheme lacked sufficient funds to carry it out, is held to
be untenable under the facts in this case.

**3. Same—Beneficiaries—Cy Pres.**

Where lands are devised in trust, with sufficient definiteness of pur-
pose to be further developed for the charitable use of educational, religi-
ous, scientific, medical and other worthy gatherings, "and to develop the
property not only into a watering resort, but into an institution after
the order of a chautauqua," the discretionary power given to the trustee
authorizes it to choose the beneficiaries, and develop the property for
the stated purpose, under the supervision of a court of equity when
applicable, and the doctrine of *cy pres* has no application.

**4. Trusts—Uses—Charitable Uses—Sufficiency of Funds.**

Where the lands and certain funds are devised in trust to be developed
for lawful charitable uses in the discretion of the trustee as to detail,
and the testator has sufficiently outlined the general plan, it is not
required that the available funds should be adequate for the full design,
but it may be applied by the trustee to a practical extent in its own
judgment to carry forward the testator's desire as far as it will extend,
under the equity jurisdiction of the courts when applicable.

ALLEN, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL by defendants from *Finley, J.,* at September Term, 1920, of
FORSYTH.

The plaintiff's testator, J. C. Tise, was the owner of the property
known as Vade Mecum Springs, a summer resort in Stokes County.

TRUST CO. *v.* OGBURN.

By his will he gave directions for his burial and made certain bequests to his wife and to his relatives, and to the church and to the poor of Winston, and to the endowment fund of the Y. W. C. A. of Winston, and then followed:

"Item (i). All the residue and remainder of my estate which it is intended shall include my property in Stokes County, N. C., at Vade Mecum Springs, to be set apart and held in special trust to conserve, protect, and beautify said property, contribute to the construction of suitable roads to and through the premises as well as to a railroad, should such an opportunity offer, and erect thereon a commodious and permanent auditorium or assembly room for the meeting and gathering of educational, religious, scientific, medicinal, or other worthy organizations or associations. My object and hope being that the same may be developed into and become not only a watering resort, but an institution after the order of a chautauqua."

Then follows the appointment of the plaintiff, the Wachovia Banking and Trust Company of Winston, as executor with full power "to sell any real or personal property at public or private sale as will seem best, and to make title to the same; to change or alter any investments of the estate or the trust herein created, if the interest of the estate or the trust funds appear to be benefited thereby, special care being taken in all cases to avoid speculations and to secure sure and profitable investments."

Upon a caveat filed in the Superior Court, it was found that the paper-writing was the last will and testament of said J. C. Tise, and judgment was entered accordingly that the plaintiff, as executor and trustee, "is authorized and directed to proceed to carry out said will in all respects." This is a subsequent action by the said executor and trustee against the widow and heirs at law and devisees to determine the validity, construction, correct interpretation and effect of the above recited item as to the residuary clause embracing Vade Mecum Springs and execution of the trust in regard thereto. The heirs at law challenge the validity of the trust upon the following grounds:

First. That the sum available and applicable to the trust is inadequate and that to use such sum in an effort to carry out the trust will be to waste that portion of the estate without accomplishing any substantial part of the donor's intention.

Second. That, independent of the inadequacy of the fund, the trust is void because:

1. The purpose declared is not a charitable purpose.

2. There is an intermingling of charitable and noncharitable purposes.

3. The beneficiaries are uncertain and indefinite.

4. The purpose and plan is uncertain and indefinite, presenting an impractical and visionary scheme without form or definite purpose, with an unlimited range of choice in the trustee, with nothing provided to guide, check, or control an unbridled discretion on the part of the trustee.

It was adjudged by the court that this provision "gives to the plaintiff as trustee the right to make, in its best judgment and sound discretion, reasonable and proper rules and regulations for the management of the trust created in item (i), and that this right of management includes the power of selection amongst the classes of educational, religious, scientific, medical, and other worthy organizations and associations, such as may be entitled to enjoy the benefits of the trust estate—such privilege of selection to be exercised in a reasonable manner and with a charitable purpose.

"That since the management of the trust committed to the trustee includes the right of selection amongst the associations and organizations as a general class mentioned in item (i), and since this right is committed by the testator to the trustee, it is adjudged by the court that no particular organization or association amongst the classes mentioned in the will has or ought to have a vested or exclusive estate in the property described in the will, but that such organizations falling within the classes mentioned in the will have only the privilege of enjoying the benefits of such trust subject to such reasonable rules and regulations as may be established by the trustee, under the direction of the court, for the management of the trust estate.

"That, it having been admitted in open court that all the heirs at law of J. C. Tise, deceased, and all of the legatees and devisees in his will are parties to this action to construe the provisions of the will, it is adjudged by the court that no further or other persons are necessary or proper parties to this action.

"That the plaintiff pay the cost of this action, to be taxed by the clerk of this court, out of the funds belonging to the estate in its possession as executor and trustee.

"This cause is retained for further directions, orders, and decrees."
The defendants appealed.

*Richard G. Stockton, Swink, Korner & Hutchins for plaintiff.*
*Wm. P. Bynum, Holton & Holton, Manly, Hendren & Womble for defendants.*

CLARK, C. J. The defendants assign as error a refusal to submit an issue tendered by them, "Are the funds available for use in connection with item (i) of the will sufficient to 'conserve, protect, and beautify'

the Vade Mecum Springs; 'to contribute to the construction of suitable roads as well as railroad to and through the premises, and to erect thereon a commodious and permanent auditorium or assembly room so as to make thereof and maintain not only a watering resort and an institution after the order of a chautauqua,' as contemplated by J. C. Tise at the time the will was written?"

The exceptions to the admission of evidence need no discussion. The evidence in regard to the location of the property and the surroundings, the buildings thereon, and its suitability for the purposes stated in the will, was uncontradicted, and the court properly held that the evidence presented a question of law only, and instructed the jury if they believed the evidence to answer the issue "Yes."

The defendant earnestly argued that to carry out this item of the will of the testator would be a waste of money, but the evidence does not sustain this proposition. The object of the testator as stated in the will was "to conserve, protect, and beautify this property of 300 acres which had been used for years as a summer resort; to contribute to the construction of suitable roads to and through the premises as well as to a railroad, if such opportunity should offer; to erect thereon a commodious' and permanent auditorium or assembly room for the meetings and gatherings of educational, religious, scientific, medicinal and other worthy organizations or associations, and to develop the property into not only a watering resort, but an institution after the order of a chautauqua." The funds of the property were adequate, without contradiction, for that purpose. Since the establishment of the New York Chautauqua there have been many similar institutions, more or less modified, carrying out that idea, established throughout the country. Even in this State there is at Black Mountain a somewhat similar retreat known as Montreat, and also near Black Mountain, Robert E. Lee Hall at Blue Ridge; near Waynesville there has been established by the Southern Methodist Church another known as Junaluska, and there are probably others. The testator's designation of "an institution after the order of a chautauqua" is not invalid on the grounds urged. The plan is neither "impossible, impracticable, a waste of money or visionary." There is a large discretion left in the executor, but the description of the design is sufficiently definite to be worked out on a practical plan. We have had similar cases in which the devise has been sustained by the courts as in the *Griffin School case* from New Bern, *Griffin v. Graham,* 8 N. C., 96; the *Clemmons will case, Keith v. Scales,* 124 N. C., 512; *Paine v. Forney,* 128 N. C., 237, and other cases cited. There is in this case not only, according to the evidence, the 300 acres of land with the buildings thereon, but a fund of $209,000 in the hands of the trustee, a well known and capable trust company. As was said

in the *Clemmons will case,* if the trustee should fail to carry into effect the trust it will be time enough then to invoke the supervision of the court.

It is true that the doctrine of *cy pres* is not recognized in this State, and it is not called for here simply by the fact that the testator wisely did not attempt to work out all the details of the plan which he knew must be modified by future developments. He wisely laid out the nature of the plan and left the details to the executor to carry out and execute his idea. It may be, but we do not now decide this, that it will become necessary to create a subsidiary corporation to execute the trust efficiently.

It is not a matter of any consequence, but as it is well to be correct, it is not inappropriate to say that the pronunciation of the phrase *"Cy Pres,"* which is Norman-French, is "see pray," Webster's International Dictionary, and not *"si pres,"* as we so often hear it called.

In *Paine v. Forney,* 128 N. C., 237, the Court held that where the fund could be applied to the indicated charitable purpose, it should be so applied, although insufficient to accomplish all the testator's desire. In this case, the terms of the will are much more elastic than in the *Forney case,* for the trustee is left to apply the funds in the best possible manner. If the funds had been even smaller in the beginning than they are, with the passing of the years, by natural accumulation, it may grow apace without violence to the object intended. The inadequacy of the trust fund, if it were inadequate, cannot in any way affect the validity of the trust. Whether it will be inadequate or not depends entirely upon the extent of the plans adopted, and we cannot presume in advance that the executor will not make his plans wisely and within the scope of his funds. We must presume that he will plan according to the funds devised or to be expected; in short, that the trustee will "cut the coat according to the cloth."

Whether the purpose of the testator was wise or not is not for the court. The trust created by the testator is a valid charitable trust, and the courts will, if necessary, so supervise its administration as to accomplish the purpose expressed in the will.

In *University v. Gatling,* 81 N. C., 509, the testator provided that the fund should endow five scholarships in the University of North Carolina. The fund was insufficient to carry out this purpose, but the court held that this bequest was valid and should go as far as possible to carry out the will of the testator. This is not the doctrine of the *cy pres* which is to apply the sum to some other purposes "equally as good," but is the application of the fund to the very purpose named, as far as it will go.

The purpose of the will is thus clearly expressed by the testator: "My object and hope being that the same may be developed into and become not only a watering resort, but an institution after the order of a chautauqua." There is no ambiguity about this intention, and the absence of detailed provisions does not make it indefinite, but most wisely leaves the development of the idea to the trustee, subject always to the supervision of the court, whenever it may be invoked, to require the trustee to conform to the general intentions of the bequest.

Whether the location at Vade Mecum is the best possible for the purposes intended by the devisor, is not a matter for the Court, and does not in any way affect the validity of the bequest. The general charge that the bequest was impractical was made in the *Girard will case,* 2 Howard U. S., 127; 84 Am. Dec., 470; and also in *Keith v. Scales,* 124 N. C., 497, and can always be urged with more or less plausibility against any devise of this nature. We think the devise in this case is sufficiently definite, that it is practicable and not forbidden by law or public policy. The object is to establish a chautauqua, the operation of the watering place is to raise funds for its support and maintenance.

In the *Girard will case, supra,* the Court said: "Possibly some of the directions given for the management of this charity are very unreasonable and even impractical, but this does not annul the gift. . . . The rule of equity on this subject seems to be clear, that when a definite charity is created the failure of the particular mode in which it is to be effectuated does not destroy the charity. . . . So that the substantial intention shall not depend on the insufficiency of the formal intention." In that case Daniel Webster said: "No good can be looked for from this college. If Girard had desired to bring trouble and quarrel and struggle upon the city, he could have done it in no more effectual way. The plan is unblessed in design and unwise in purpose. If the court should set it aside, and I be instrumental in contributing to the result, it will be the crowning mercy of my professional life." He was speaking with the zeal of counsel for his client, basing his remarks largely upon the provision in the devise that no minister of the gospel should ever be permitted to enter the precincts of the college. Great man as he was, he was as mistaken on this occasion as when he prophesied that the Pacific coast (then recently acquired by this country) would be forever barren, useless and uninhabited.

The courts can be but little influenced by predictions of this kind. The only question before us is not the anticipations of counsel, warmed by zeal for their clients, but whether the devise is legal in its purposes and practicable of administration. Whether the fund shall be sufficient to carry out the development intended to the full scope of the testator or not, it is sufficient as to the extent of the fund which can be used

for that purpose. In *Keith v. Scales, supra,* it is said, in speaking ·of the Griffin free school devise, which it had been sought to invalidate, "The school had no previous existence, but was established by the trustee. The Court upheld the trust, and the institution is still the pride of New Bern."

It is rarely the case that counsel representing clients who are the heirs at law of the testator can see and appreciate the wisdom of a testator who disposes of a considerable estate to charity or other purposes for the public welfare. We need not draw out this opinion by the recital of decision after decision sustaining general purposes similar to this. Those we have already cited can be duplicated manifold by diligence in collecting them. It is sufficient to say briefly that:

1. The validity of the trust does not depend upon the adequacy of the fund to execute it to the full extent of the intention of the testator.

2. The purpose of the testator was the creation of an institution for the public benefit and therefore not illegal. The method of executing the trust was largely and wisely left to the executors within the general scope of the purposes recited in the will; and, as already stated, should there be a deviation from that purpose the correcting hand of the court of equity can at any time be invoked.

The heirs at law insist that on account of the uncertainty of the beneficiary no person could, by right, claim benefit under the will. In *Keith v. Scales,* 124 N. C., 512, the Court, in answer to the objection that "there are no beneficiaries mentioned in said paper-writing sufficiently identified that can enforce the trust," said: "That was true in the *Girard College case,* the *Griffin School case,* and all similar instances. In those cases, what boy could come into court and say, 'I, among others, was intended to enjoy this bounty,' the trustee could answer, 'In our judgment you are not best entitled to the benefit of the donation.' Yet such devises were upheld."

In cases of this kind, to defeat a bequest for public charity, the precedent most generally relied upon by the heirs at law and next of kin is the famous *Tilden will case, Tilden v. Green,* 130 N. Y., 29, but it must be noted that that case was decided upon a statute of New York which requires that to constitute a good charitable trust the testator should select and designate the ones to be benefited. This has never been held except in that State and in others having a similar statute. In this, and in a large majority of the states, it is sufficient if the testator describes definitely the general nature of the trust. He may leave the details of the execution to the trustee under the superintendence of the court of equity. A gift to charity is complete without reference to any of the suggestions or directions of the testator as to the details of the manner in which it shall be carried into effect. 5 R. C. L.; 63 Am. St., 169, note; *Russell v. Allen,* 107 U. S., 166.

The rule is thus stated in *Keith v. Scales,* 124 N. C., 512, quoting authority: "It is immaterial whether the person to take be *in esse* or not, or whether the legatees were at the time of the bequest a corporation capable of taking or not, or how uncertain the object may be, provided there be a discretionary power vested anywhere over the application of testator's bounty to these objects."

In this State a gift to public and charitable uses will be sustained when not opposed to any express provision or the plain policy of the law, provided the objects are specific enough that the court by decree can effectuate them. *School v. Institution,* 117 N. C., 164; *S. v. Gerard,* 37 N. C., 210. In the latter case the devise was to "the poor of the county." No more indefinite designation of a class could be imagined. The term "poor" is relative, but the Court sustained the devise as specifying the class out of which the individual beneficiaries were to be selected.

The tendency of modern thought is more and more that the ownership of great wealth is not merely for the transmission of it to one's own family, but that it is largely a public trust, and that where the fund is more than sufficient for the reasonable needs of the heirs and next of kin, there should be some direction given by devise for the public welfare or for the general benefit of the community.

Neither the right of inheritance nor of disposition by will are inherent, but both are entirely statutory. At common law, at death all the personalty went to the church to be disposed of *"in pios usos";* and later, by statute, it went to the executor or administrator without accountability, and, later still, was disposed of by the statute of distributions, if not bequeathed. The real estate passed to the heir, but subject to the right of the lord to wardship or a fine (which was a year's rent) and other feudal charges. As to the disposition of realty by will, in *Hodges v. Lipscomb,* 128 N. C., 57, it is said: "When one closes his eyes on sublunary scenes, and from his cold grasp drops the things for which he has toiled or sinned, he has no natural right to direct what shall become of them thereafter. The right to dispose of property by will is purely statutory, as Mr. Blackstone tells us. From the Conquest down to the comparatively recent statutes of wills, 27 and 32 Henry, VIII, the power to dispose of realty by will did not exist in England (2 Bl. Com., 374). This right is not recognized, or recognized only to a limited part of the estate, in France and many other countries. As it is given by statute, it may be modified or revoked by statute."

While Mr. Carnegie's assertion that "To die rich is to die disgraced" cannot be sustained, those rich men should be remembered with honor who devote some part of their estate to widen opportunity and enjoy-

ment for the public. In death, as in life, those who have accumulated large estates should have regard "for the spears of Judah and the archers of Benjamin"—that solid mass of men who have lived in poverty or struggled through life on small means, yet whose law-abiding spirit has protected the property of those who have made large accumulations of wealth, in safety and untroubled by the spoiler. Not to do this is to fail in their reasonable duty to the community and to defeat the just expectations of the public.

The courts always lean strongly to support and sustain all reasonable execution of such bequests and devises.

No error.

ALLEN, J., dissenting: The question to be decided on this appeal is the validity, as an alleged charitable trust, of item "i" of the will of J. C. Tise, which reads as follows:

"All of the residue and remainder of my estate, which it is intended shall include my property in Stokes County, N. C., at Vade Mecum Springs, to be set apart and held in special trust to (1) conserve, protect, and beautify said property; (2) contribute to the construction of suitable roads to and through the premises as well as railroads, should such opportunity offer; and (3) erect thereon a commodious and permanent auditorium or assembly room for the meetings and gatherings of educational, religious, scientific, medicinal, and other worthy organizations or associations. My object and hope being that the same may be developed into and become not only a watering resort, but an institution after the order of a chautauqua."

It will be noted that there is no limit as to the beneficiaries of the trust, and that they are all "educational, religious, scientific, medicinal, and other worthy associations" throughout the world, and as such I think it is too indefinite to be enforced.

The authorities on the question are numerous, but I shall only refer to three or four North Carolina cases taken from brief of appellant which, I think, are decisive.

In *Bridges v. Pleasants,* 39 N. C., 26, it was held that a bequest, "to be applied to foreign missions and to the poor saints; this to be disposed of and applied as my executor may think the proper objects according to the Scripture, with the greater part, however, to be applied to missionary purposes," was too indefinite and, therefore, void, notwithstanding the executor had accepted the trust and had formed a scheme for administering it whereby the trust fund would be used in accordance with the purpose of the donor.

*Ruffin, C. J.,* said: "The paper must tell us the testator's meaning or we can never find it out. . . . Wherever the aid of the court is

invoked there must appear some right in the person who applies, or for whose benefit it is sought, to support a gift by will. In the present case it is impossible, from anything appearing in the will, to conjecture how, by whom, or in whose favor these sums of money were to be administered. What kind of 'foreign missions,' whether diplomatic or religious, or, if the latter, of what sect or to what countries, no man can say. So, likewise, of the 'home missions.' The gift to the 'poor saints' is equally indefinite. . . . The poor of the country or city are proper objects of such charity; for the objects of bounty are readily known, and their number easily ascertained, and the gift is in fact to the public. But the 'poor saints,' if it could be known who they are at all, are not mentioned in the will as of any county, nor country; but, if any can take, all such persons throughout the world are to share in it, which is preposterous."

In *Holland v. Peck,* 37 N. C., 255, the testator directed his executors to pay certain moneys "for the benefit of the Methodist Episcopal Church in America, whereof Francis Asbury is the presiding bishop, this sum to be disposed of by conference or the different members composing the same, as they shall, in their godly wisdom, judge will be most expedient or beneficial for the increase and prosperity of the gospel." It was held (*Gaston, J.*) to be a devise upon trust, and void for indefiniteness.

It was further held that the precise purpose of the testator in the bequest cannot be collected therefrom. The disposition of the money is directed to be made by the conference "as they shall, in their godly wisdom, judge will be most expedient or beneficial for the increase and prosperity of the gospel." The distribution of the money is to be the advancement of the gospel. But the means by which that end is to be effected are left entirely to the uncontrolled discretion of the conference. Is the money to be employed in building churches, in establishing schools, in paying ministers, in publishing books, or in supporting the poor? . . . It is certainly the general rule that, where property is given upon a clear trust but for uncertain objects, the subject of such trust is regarded as undisposed of, and the benefit of the trust results to those to whom the law gives the property in default of disposition by its owner. In the case of a trust, there must be somebody in whose favor the court can decree a performance."

After pointing out what the doctrine of a trust in favor of the next of kin in such case does not obtain in England because of the doctrine of *cy pres,* the Court, speaking of that doctrine, says:

"The principle is admitted to be unsound, and several of the decisions founded upon it are revolting to common sense. . . . But we have no instance in this State . . . where this extravagant doctrine on

the subject of charities has ever been acknowledged. . . . By affecting to consider charity as the substance, and all else as but the formal part of a will, and compelling the testator to be charitable in our way, when we do not know in what way he purposed to be charitable, or when the charity he purposed can be executed, we shall, in effect, be making a will for him where he is silent, and altering it when his declared intention necessarily fails."

A bequest "to some promising young man of good talents and of the Baptist order, to be selected by my executors," is void "because of its indefiniteness. There is no person who can claim it." *Hester v. Hester,* 37 N. C., 330.

A devise that land should be sold and "the proceeds laid out in building convenient places of worship, free for the use of all Christians, who acknowledge the divinity of Christ and the necessity of a spiritual regeneration," is void for uncertainty. *White v. University,* 39 N. C., 19.

In stating the general grounds upon which gifts to public charitable uses will be sustained in equity, *Ruffin, C. J.,* declared the doctrine of this Court to be that such gifts will be sustained "when not opposed to the express provisions or the plain policy of the law, provided the object is so specific that the Court can by decree effectuate it, by compelling the execution of the will, according to the intention of the donor, and keeping the subject within the control of the Court, so as to have the will of the donor observed. . . . It seems to us that it would be impossible for the Court to keep any control over such persons or property; and, therefore, that this is a trust, which the Court cannot undertake to execute, since it cannot execute it effectually."

These cases have been frequently affirmed, and in all of them the purpose of the testator was as commendable and as definitely expressed as in the one before us.

Indeed, I do not see how a trust could be made more indefinite and uncertain than one to all "worthy organizations or associations," embracing, as it does, the whole world.

It is also doubtful if this is a charitable trust as it does not appear that it is a gift, and there is nothing to prevent the trustee from making the usual charges for accommodation at fashionable resorts, which would be prohibitive to a majority of the membership of the different organizations referred to in the will.

I think the judgment of the Superior Court ought to be reversed.

WALKER, J., concurs in this opinion.