OLIVER D. JOHNSON, CORA HOLCOMBE, JAMES L. WAGNER, JAMES D. RAY, W. T. DUCKWORTH, J. R. OWEN, E. E. WHEELER, H. W. BROOKS, JOHN W. INZER, EDGAR J. DUCKWORTH, as Trustees of the HAYWOOD STREET BAPTIST MISSION, v. JAMES L. WAGNER, JAMES D. RAY, W. T. DUCKWORTH, J. R. OWEN, E. E. WHEELER, H. W. BROOKS, JOHN W. INZER, EDGAR J. DUCKWORTH, as Trustees of the REVELL HEIGHTS BAPTIST CHURCH ASSEMBLY GROUNDS and All Persons of the Baptist Denomination Affiliated With the BUNCOMBE COUNTY BAPTIST ASSOCIATION, THE NORTH CAROLINA BAPTIST STATE CONVENTION, and MRS. JOHN BOMAR.

(Filed 5 March, 1941.)

**1. Declaratory Judgment Act § 2a—**

An action to determine the rights of the parties under a charitable trust created by will, in which the trustees and all of the agencies who are beneficiaries of the trust are made parties, is justiciable under the Declaratory Judgment Act.

**2. Trusts § 11—**

Courts of equity, in the exercise of their inherent and supervisory jurisdiction of charitable trusts, upon proper application of the trustees, will construe the trust, determine the duties imposed upon the trustees, and advise the means of effectuating the general and ultimate beneficial intent of the trustor.

**3. Same—**

Where the particular method prescribed by the trustor for effecting the general and ultimate purpose of a charitable trust becomes impossible to pursue, the trust does not fail, but courts of equity have the power to grant relief to the end that the general and ultimate intent of the trustor may be effectuated.

**4. Same—Decree that trustee should sell trust property in order to effectuate general and ultimate purpose of trust is upheld.**

Testator devised certain realty to named trustees to be used by designated agencies of a church denomination as an assembly ground and a site for churches, schools, homes, hospitals, and cottages for retired ministers and returned missionaries. In an action to construe the rights of the parties in the trust it was made to appear that the land was inaccessible, that the cost of developing same was excessive, and that adequate funds for such development were not available, and that the specified agencies of the denomination already maintained an assembly ground

where the ultimate purposes of the trust could be effectuated and that said agencies would not accept the land for the purposes of the trust. *Held:* The Superior Court, in the exercise of its equitable jurisdiction, has power and authority to authorize the trustees to sell the land in order that the ultimate purposes of the trust may be effectuated.

5. **Same—Equity may decree that trust property be sold and proceeds of sale and income from other trust property be used to accomplish ultimate purposes of the trust.**

Testator devised certain land to trustees to be used by the agencies of a church denomination for an assembly ground and other particular purposes set forth. In another item of the will testator set up another trust and stipulated that a part of the income therefrom should be used by the trustees first named, in furtherance of the purpose of the trust for the assembly ground, and for such religious purposes as the trustees may deem worthy. *Held:* Although the phrase "for such other religious purposes" must be confined to the objectives of the trust, upon determination that the land devised cannot be used in effectuating the purpose of the trust, but that the agencies of the denomination maintained another assembly ground at which the purposes of the trust could be effectuated, and decreeing that the trustees might sell the realty, the court has the power to further decree that the proceeds of the sale and the income from the other trust property should be used to accomplish the general and ultimate purposes of the trust.

APPEAL by plaintiffs from *Nettles, J.,* at December Term, 1940, of BUNCOMBE. Affirmed.

*Narvel J. Crawford for plaintiffs.*
*Sale, Pennell & Pennell for defendants.*

DEVIN, J. This action was instituted under the North Carolina Declaratory Judgment Act (Public Laws 1931, ch. 102), for the purpose of obtaining judicial construction of certain provisions of the will of O. D. Revell, deceased, and for advice in the administration of charitable trusts created by said will, and for a declaration of the rights of the parties in relation thereto.

In Item 27 of the will the testator devised to the board of trustees of Revell Heights Baptist Church Assembly Grounds certain real property, therein particularly described, consisting of the "top of what is known as Woodfin Mountain," then known as Revell Heights, but to be thereafter known as Revell Heights Baptist Church Assembly Grounds. He directed that this property be used perpetually by the Missionary Baptist Denomination, affiliated with the Buncombe County Baptist Association, the North Carolina Baptist State Convention, and the Southern Baptist Convention, as a Baptist Assembly Ground for the building of churches, schools, homes, hospitals and cottages for retired ministers and returned missionaries.

The board of trustees named in this item of the will, who are the defendants here, were authorized to "make such rules and regulations as they shall deem meet and proper covering the use and occupancy of said property or any part thereof, and shall have at all times full and complete control thereof." The trustees were directed to use the income from a fund provided in the will for leveling off the top of the land so that it might be rendered suitable for building sites. The property was to be "maintained for the white Baptist Denomination." The trustees were given power to name successors to those who should die or resign. It was further provided that Rev. John Bomar and his wife should have right to occupy during their lives one. of the cottages on said ground, when built. It was admitted that John Bomar is dead, and the residence of his widow is unknown. She was made a party defendant and served by publication.

In Item 28 the testator created another trust and devised to the board of trustees of Haywood Street Baptist Mission certain real property in Asheville, consisting of a vacant lot on Haywood Street, "to be used as a Baptist Mission for the purpose of holding religious meetings." Funds were to be solicited for the purpose of erecting a suitable building on said lot. The same trustees previously named for the Revell Heights Baptist Church Assembly Grounds were also appointed trustees of the Haywood Street Baptist Mission, with power, however, to appoint additional trustees for said mission, if deemed proper.

In Item 29 of the will all the residue and remainder of the testator's property (not thereinbefore disposed of) was devised to certain persons as trustees to hold, manage, invest and reinvest the proceeds of sales of the property therein devised; and in Item 34 of the will it was provided that the income thus devised should be distributed as follows: ten per cent to be retained for investment, and ten per cent paid "to the Board of Trustees of Revell Heights Baptist Church Assembly Grounds and for the purposes designated in paragraphs number 27 and 28 thereof, and for such other religious purposes as said Board of Trustees may determine as worthy." The remainder of the income was directed to be paid to the nieces and nephews of the testator.

It was admitted in the pleadings and found as a fact by the court below that the real property described in Item 27 is inaccessibly located and impracticable for the purposes described in the will, and that the cost of developing the land for the purposes set forth would be exorbitant, and that the funds available are entirely insufficient. It was further admitted that those of the Missionary Baptist Denomination affiliated with the Buncombe County Baptist Association, the North Carolina Baptist State Convention, and the Southern Baptist Convention maintain an adequate assembly ground at Ridgecrest, North Carolina,

wherein all the purposes expressed in Item 27 may be fully carried out, and that, through the proper boards and committees of the Baptist organizations named, methods have been adopted for carrying out the general purposes expressed in said. will of providing for retired ministers and their widows, and returned missionaries.

It was further admitted in the pleadings that the defendants, trustees of Revell Heights Baptist Church Assembly Grounds, had tendered to the executive committees and boards representing the Baptist organizations named in the will, for whose use the property was devised, such legal rights, benefits and privileges as were granted to them by the will, and each of the named organizations, through its duly constituted committee or board, rejected the use of said real estate for the purposes set forth in the will, and declined to make contributions for the development and operation of the land for the purposes and ideas set forth in the will, on the ground that the land was inaccessible and impracticable for the uses designated.

The trustees named in Items 27 and 28 are substantially the same, and appear here both as plaintiffs and defendants, but all the agencies representing the white Missionary Baptist Churches of Buncombe County, the State of North Carolina, and the Southern States, and all persons of the Baptist Denomination affiliated with these representative bodies, are made parties, and the purpose of the action is to determine the rights of all the parties with respect to the property devised by O. D. Revell. Hence, we hold that a proper justiciable question is presented for our decision under the provisions of the North Carolina Declaratory Judgment Act.

1. Do the defendants have the right and power to sell the real property devised in Item 27 of the will of O. D. Revell?

One of the most important subjects of equitable jurisdiction is that of trusts, and the construction of charitable trusts created by wills, the determination of the duties imposed upon trustees, the powers granted, and the means of effectuating the ultimate benefits conferred, constitute matters peculiarly within the province and jurisdiction of courts of equity. In the exercise of the supervisory power of the courts of equity over trusts, trustees and those interested in the administration of trusts are permitted to apply to the court for plenary and authoritative advice in relation thereto. *Bank v. Alexander,* 188 N. C., 667, 125 S. E., 385.

Cases involving the subject of charitable trusts have frequently engaged the consideration of this Court, and the questions there decided have given occasion for the statement of the equitable principles controlling upon the facts appearing in those cases. *Bond v. Tarboro,* 217 N. C., 289, 7 S. E. (2d), 617; *Carswell v. Creswell,* 217 N. C., 40, 7 S. E. (2d), 58; *Williams v. Williams,* 215 N. C., 739, 3 S. E. (2d),

334; *Woodcock v. Trust Co.,* 214 N. C., 224, 199 S. E., 20; *Whitsett v. Clapp,* 200 N. C., 647, 158 S. E., 183; *Holton v. Elliott,* 193 N. C., 708, 138 S. E., 3; *Shannonhouse v. Wolfe,* 191 N. C., 769, 133 S. E., 93; *Bank v. Alexander,* 188 N. C., 667, 125 S. E., 385; *Trust Co. v. Ogburn,* 181 N. C., 324, 107 S. E., 238; *Church v. Ange,* 161 N. C., 314, 77 S. E., 239; *Paine v. Forney,* 128 N. C., 237, 38 S. E., 885; *Keith v. Scales,* 124 N. C., 497, 32 S. E., 809. Many older cases are cited and analyzed in *Woodcock v. Trust Co., supra.* The power of the Court in upholding charitable trusts has been fortified by recent statute. Public Laws 1925, ch. 264.

In this case, while the general purpose of the testator to donate property to charitable uses, and the designation of the ultimate beneficiaries for whom the trust is created, sufficiently appear, the fact seems to have been definitely established that the particular mode for the use of the designated property has failed. The gift of the property for a designated use in a particular manner has been declined as impracticable. The donation of the land for use as an assembly ground has failed, but that does not destroy the trust. It seems to be a generally recognized principle controlling the decisions of courts of chancery on the subject that when a definite charity has been created, the failure of the particular mode in which it is to be effectuated does not destroy the trust. It has been well said, "the substantial intention shall not depend on the insufficiency of the formal intention." *Trust Co. v. Ogburn, supra.* The general intent of the testator must prevail over the particular mode prescribed. Zollman Am. Law of Charities, sec. 137. Notwithstanding the impossibility of effectuating the particular method prescribed for carrying out the provisions of a trust, the Court will exercise its equitable jurisdiction and supervise the administration of the fund so as to accomplish the purposes expressed in the will. *Paine v. Forney, supra; Trust Co. v. Ogburn, supra.*

In 2 Bogert on Trusts and Trustees, sec. 392, will be found collected numerous cases relating to the power of courts of equity to authorize sales of real property conveyed to charitable uses, when necessary for the proper administration of the trust. The general doctrine is stated in 14 C. J. S., page 505, as follows: "It is recognized that a court of equity has a general and inherent jurisdiction, as incident to the administration of a charity estate, to order the alienation of charity property in a proper case." See, also, 2 Scott on Trusts, sec. 167.

In *Holton v. Elliott, supra,* it was said: "Courts of equity have jurisdiction to order, and, in proper cases, do order the alienation of property devised for charitable uses. *Keith v. Scales,* 124 N. C., 497; *Vidal v. Girard,* 43 U. S., 127, 11 Law Ed., 205; 11 C. J., 323; Eaton on Equity, 349. The power is not infrequently exercised where conditions change

and circumstances arise which made alienation of the property necessary or beneficial to the administration of the trust." And in *Church v. Ange, supra, Allen, J.,* speaking for the Court, uses this language: "Courts of equity have long exercised jurisdiction to sell property devised for charitable uses when, on account of changed conditions, the charity would fail or its usefulness would be materially impaired without a sale." In *Shannonhouse v. Wolfe, supra,* this Court held that a sale of property would be ordered when "indispensable to the preservation of the interests of the parties in the subject matter of the trust."

In *Bond v. Tarboro, supra,* it was said, referring to the effect of exigencies arising which had not been contemplated by the donor, that the Court should occupy, as far as may be, the place of the creator of the trust, and do with the fund what he would have directed had he anticipated the emergency. The Court quoted from *Curtiss v. Brown,* 29 Ill., 201, as follows: "From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery." *Trust Co. v. Laws,* 217 N. C., 171, 7 S. E. (2d), 470; *Cutter v. Trust Co.,* 213 N. C., 686, 3 S. E. (2d), 5; *Trust Co. v. Nicholson,* 162 N. C., 257, 78 S. E., 152; *Ex Parte Wilds,* 182 N. C., 705, 110 S. E., 57.

It will be noted that while the will contains no express authority to the trustees to sell, neither is the sale of the property described in Item 27 forbidden. There is no condition imposed, no limitation over prescribed, no clause of reversion inserted. *Hall v. Quinn,* 190 N. C., 326, 130 S. E., 18; *Lassiter v. Jones,* 215 N. C., 298, 1 S. E. (2d), 845.

The facts upon which the decision in *Penick v. Bank,* 218 N. C., 686, was predicated, were substantially different from those appearing here. In that case it was held that the income from one trust fund could not be applied to the purposes of another fund, in violation of the express terms of the will.

We conclude that the court below has correctly held, upon the facts established, that the defendants trustees are clothed with power and authority to sell the land described in Item 27 of the will.

2. It follows that defendants have the right to use the proceeds of sale of the land, as well as the income received under Item 34 of the will, in accord with the dominant intention of the testator in donating his property to charitable uses under the control of the religious organizations named, representing those who belong to the Baptist Denomination, in carrying out the primary purposes for which these agencies were established. The fund was expressly set apart to be used for the purposes designated in Items 27 and 28 of the will, and "for such other religious purposes as said Board of Trustees may determine as worthy." This

must be held, however, to be confined to those objects for the administration of which the named agencies of the Baptist Denomination were constituted.

For the reasons herein set out, we conclude the defendants board of trustees have full power and authority to receive the income granted in Item 34 of the will and to expend the same for religious purposes in accordance with the powers conferred upon said board as herein defined.

The sale of the real property herein authorized will be under the supervision of the Superior Court of Buncombe County. Judgment will be entered in accord with this opinion. Except as herein modified, the judgment below is

Affirmed.