EMORY WEST, BESSIE MURRAY, CORA B. MURRAY, VIRGINIA MUR-
RAY GILLIAM AND CLYDE O. MURRAY, ON BEHALF OF THEMSELVES
AND ALL OTHER HEIRS AT LAW OF J. L. MURRAY, DECEASED, v. LYONS
LEE, CLARENCE SAWYER, J. C. MARTIN, W. E. RANKIN AND FRANK
M. PARKER, TRUSTEES OF THE ESTATE OF J. L. MURRAY, DECEASED.

(Filed 1 March, 1944.)

**1. Schools §§ 1, 9—**

The State maintains no monopoly in the education of its citizens. Nei-
ther the school law nor the educational policy of the State excludes private
educational enterprise patently conducive to the public welfare.

**2. Trusts § 1d: Schools §§ 1, 9—**

A trust created by will in 1895, providing a free permanent common
school English education for poor white children of Buncombe County, of
eight years old and over, whose parents are financially unable to so edu-
cate them, is valid and effective, notwithstanding the great advance in
free educational facilities provided by the State.

APPEAL by plaintiffs from *Alley, J.,* at December Term, 1943, of
BUNCOMBE.

The plaintiffs brought this action against the defendant trustees to
have a testamentary trust created by the will of J. L. Murray, deceased,
terminated and to have the remaining property turned over to them as
heirs at law of Murray.

The will was executed 10 June, 1895, and was admitted to probate
2 September of that year. After providing a life estate in the property
for his wife, the testator devised and bequeathed all of his estate to cer-
tain named trustees, and their successors, the income, after paying taxes

and keeping the property in repair, to be used ". . . in establishing and forever maintaining and conducting a permanent common school for the education in the common school branches of an English education of the poor white children of Buncombe County, North Carolina, living anywhere within said county." It is further provided that the school shall be conducted in a building in the City of Asheville to be selected by the trustees, with authority to conduct it in any building located on the demised properties or in any other building within the city. Tuition in the school is required to be free and to be given to the children, of eight years and over, of parents who are not financially able to provide an education for their children in the branches taught in the school. There is provision for succession of trustees.

Under this trust a school known as the Murray Hill School was set up and, conducted in a building on the devised premises. This building, however, was later condemned and by arrangement with the Buncombe County Board of Education, a room was assigned to the use of the trustees in the Park Avenue school building, one of the public school buildings under the control of said board in the City of Asheville. For a few years the conduct of the school was suspended due to the inability to secure instructors qualified under the provisions of the will; but the school was reopened and is being conducted by the trustees under the trust. It is understood that only children of parents unable financially to provide for the education of their children, as provided in the will, are admitted; but within this latitude children who, by reason of natural endowment or environment, or other retarding cause, have not been able to keep pace with the average pupil are receiving the special attention of the school.

The trust is assailed in this action, and it is sought to terminate it, upon the ground that the expansion of the State school system and the enlargement of opportunity adequately meet every educational demand of indigent children provided for in the will, and destroy the object of the trust.

There are allegations going to the manner of conduct of the trust and supposed departure from its terms which have no legal bearing on the question before us—the termination of the trust, which is the prayer of the complaint; and these need not be considered here.

Among the stipulations made between the parties for the purpose of the hearing, we find it agreed that on or about the year 1887 public schools were established in Asheville and Buncombe County for the education of children from six to twenty-one years of age, which schools have been continuously operated and have been open to those possessed of the requisite qualifications down to the present time; and in said schools the common school branches of an English education have been

continuously taught; and that this was true at the time of the execution of Murray's will. It is agreed that since the execution of the will great improvements have been made in school facilities, school buildings, and generally in the public school system, and that financial support of the schools has been shifted partly, but not wholly, to the State.

It further appears from the agreement that there are, and have been from the date of the will to the present time, in the City of Asheville and County of Buncombe children of eight and more years of age whose parents were, and are, unable to provide them with an education in the common school branches; and that the children admitted to the Murray School are solely of that class.

It is agreed that the trust declared in the will is a charitable trust, perfectly created and established, without limitation as to time of operation; and that a caveat to the will was filed by J. C. West and judgment sustaining the validity of the will was rendered 26 May, 1906. See *In re Murray's Will,* 141 N. C., 588.

Upon these and other more formal stipulations, the case was, by agreement of parties, submitted to Judge Alley at December Term, 1943, of Buncombe Superior Court, for determination without a jury. From a judgment upholding the validity of the trust and declining the prayer of the plaintiffs to have it dissolved, plaintiffs appealed.

*John C. Cheesborough and Ronald E. Finch for plaintiffs, appellants.*
*S. G. Bernard for defendants, appellees.*

SEAWELL, J. The stipulations and admissions of the parties, taken together with the grounds on which it is sought to terminate the trust, leave little to be said by the Court.

Following the reference made to the case *"In re Murray's Will,* 141 N. C., 588,"* we find that in that proceeding, the will was principally challenged because of the trust now under consideration in this Court. With reference to the trust, it was there contended that its provisions were so vague that no *cestui que trust* was definitely ascertainable from its terms. Although in that case *Justice Connor,* speaking for the Court, declared that the question of validity of the trust on account of such supposed vagueness was not then before the Court, the opinion proceeds to find that there is no defect in that respect. On the present appeal, that question is presented, and we think answered by the stipulations.

The date of the will—1895—is worthy of note. The benevolence of the donor recalls the educational enthusiasm of the period. It is. reminiscent of the brilliant crusade of McIver and Alderman, and later of Aycock. It is a history into which was written the aspirations of our whole people; and in the intervening years, the State has accomplished

much.  We agree with the encomium counsel for the appellants have
addressed to public school progress.  Even some of the smaller towns
have a larger investment in educational facilities, and buildings more
commodious and impressive than the University of North Carolina
afforded when Aycock, McIver and Alderman matriculated there.  The
public school term has been increased under the Constitution from four
to six months, and by statute to a minimum of eight months, and a
maximum of nine months, if the district or the county may so request.
Appropriations are large, considering per capita wealth, and the oppor-
tunities of free tuition afforded the youth of the State have been vastly
enlarged.  But it is not claimed by the most optimistic that this amazing
progress has saturated the public demand or the public need.  Teacher
load is a serious problem, menacing efficiency of instruction.  Individual
attention to backward children is a related unsolved problem.  If the
Murray trust were instigated today, we could not, as a matter of law,
deny it a place in the all-out educational effort upon the argument
advanced, if we were permitted to entertain it at all.

However, the adequacy of the public school system to meet the educa-
tional needs of the children of indigent parents is not a question we may
consider in passing upon the legality and propriety of the further con-
tinuance of a charitable trust having the same purpose in view.

The State maintains no monopoly in the education of its citizens.  It
neither requires nor expects that its youth receive tuition exclusively
within the State sponsored public schools.  The compulsory attendance
law recognizes the private schools teaching comparable branches, and
gives credit for attendance there.  Neither the school law nor the educa-
tional policy of the State excludes private educational enterprise patently
conducive to the public welfare.  The reasons are cogent and too numer-
ous for discussion here.  So long as there remains the liberty to attend
the schools it provides, there remains the *raison d'etre* of a charitable
trust of this character, no matter how adequate the public school system
provided by the State may become.

Indeed, there is implied in the definition of charitable trusts, whose
purposes almost necessarily are found amongst those which all enlight-
ened countries recognize as also obligations of government, that they
may, as coadjutors, stand side by side with State agencies instituted and
maintained for the same purpose.

"A charity may be defined as a gift to be applied consistently with
existing laws, for the benefit of an indefinite number of persons, either
by bringing their minds or hearts under the influence of education
or religion, by relieving their bodies from disease, suffering or constraint,
by assisting them to establish themselves in life, or by erecting or main-
taining public buildings or works or otherwise lessening the burdens of

government." Scott on Trusts, sec. 368; *Whitsett v. Clapp,* 200 N. C., 647, 649, 158 S. E., 183.

The appellants have admitted that even in prosperous Asheville and Buncombe County, as indeed elsewhere in all the world, the Biblical adage holds true: "Ye have the poor always with you"; and that there are, in the area covered by the trust, those who may qualify as beneficiaries. The plaintiffs, we think, are concluded by this admission.

We find nothing in the record that would justify dissolution of the trust. The judgment of the court below is
    Affirmed.