WACHOVIA BANK & TRUST COMPANY, A CORPORATION, TRUSTEE OF THE ESTATE OF CARROLL P. MARRIOTT, DECEASED, v. BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA, A CORPORATION OF THE STATE OF NEW YORK, AND OHIO WESLEYAN UNIVERSITY, A CORPORATION OF THE STATE OF OHIO.

(Filed 9 October, 1946.)

**1. Wills § 31—**

In the construction of a will, the intent of the testator as gathered from the four corners of the instrument is controlling unless contrary to some rule of law or at variance with public policy.

**2. Same—**

In ascertaining the intent of the testator, the circumstances surrounding the testator and his relationship to the beneficiaries may be considered in order that the language may be interpreted from testator's viewpoint.

**3. Wills § 33d: Trusts § 29—**

A bequest to a group of schools operated as a unit for the Christian education of mountain boys and girls provided the beneficiary should be in existence at the time of the termination of prior trust estates, will be upheld notwithstanding a change in name and curriculum and the discontinuance of certain of the schools, when it appears from the evidence and the findings of the jury that substantially the same educational program in which the testator was primarily interested was continued under a different name at one of the original institutions with which other associated units had been consolidated, in the adaptation of the program to changing local conditions, since under such circumstances, as a matter of law, the beneficiary had not ceased to exist.

**4. Trusts § 30—**

A bequest to an unincorporated association, school or organization, by its popular name, will be upheld as a gift in trust to its parent organization when such parent organization, legally capable of taking and handling property, exists.

APPEAL by the defendant, Trustees of the Ohio Wesleyan University, from *Nettles, J.,* at March Term, 1946, of Buncombe.

The plaintiff, Trustee, under the will of Carroll P. Marriott, brings this action under the provisions of the Uniform Declaratory Judgment Act, for the purpose of obtaining a construction of the said will; and for directions as to the disposition of the *corpus* of the Trust, under Item (i) of the will, as follows:

"Upon the termination of all the trusts provided herein to pay over and deliver the property of the estate, both principal and accumulated income, to the Asheville Normal and Associated Schools, of Asheville, N. C., to be added to the endowment funds of that institution. Should the said Asheville Normal and Associated Schools be not in existence or be discontinued any time as a public educational institution, then the said fund is to be paid to the Ohio Wesleyan University, of Delaware, Ohio, as an endowment to the Department of Chemistry."

All the other trusts referred to in the above item were terminated on or before 9 February, 1945, and the sole remaining question for determination is the proper disposition of the *corpus* of the estate under the terms set forth in the foregoing item of said will.

The evidence tends to show that at the time of the execution of the will of Carroll P. Marriott in 1921, and at the time of his death in 1922, the Woman's Board of Home Missions of the Presbyterian Church in the United States of America, a corporation, operated a large number of schools in the mountain areas of the United States, among them the Asheville Normal and Associated Schools of Asheville, N. C.

The Asheville Normal, the Home School and Pease House were located on a campus situate on the west side of Biltmore Avenue, in the City of Asheville, during the time they were operated as educational institutions. The Asheville Normal gave two years of post high school work until a few years before it was closed, during which period a four-year teachers' course was given, and the name of the school was changed to Asheville Normal and Teachers' College. The Home School was a school for girls in the elementary and high school grades. The Pease House was a school for small children in grades one to six. The Asheville Farm School was situated on a tract of land consisting of approximately 640 acres near Swannanoa, about ten miles from the City of Asheville.

The Woman's Board of Missions also operated the Dorland Bell School in Madison County, N. C., for boys and girls from the mountain area, in vocational, pre-high school and high school work. Later this school was discontinued as a coeducational institution and the boys were transferred to the Asheville Farm School. Some of the students at the Home School were transferred to Dorland Bell when the Home School was closed. Now, the Dorland Bell School for Girls, the Asheville Farm School for Boys and the Warren Wilson College, are operated as sepa-

rate units or divisions on the Asheville Farm School campus, under the name of Warren Wilson College. Educational opportunities are provided for deserving boys and girls from the mountain area of Western North Carolina, beginning with the lower grades through high school and the junior college level. None of the schools referred to herein have been incorporated.

The jury answered certain issues to the effect that at the time of the execution of the will of Carroll P. Marriott, in 1921, the Asheville Normal and Associated Schools of Asheville, N. C., consisted of the following schools: Asheville Normal, Home School, Pease House and Asheville Farm School; that said schools during the years 1921 and 1922 were owned and operated by the Woman's Board of Home Missions of the Presbyterian Church in the United States, and that the National Board of Missions of the Presbyterian Church in the United States of America, a corporation, has succeeded to all the rights and interests of the aforesaid Board. The jury also found that the Pease House in 1925, the Home School in 1930, and the Asheville Normal in 1940, ceased to exist as public educational institutions, but that the Farm School operated continuously up to and including the 9th day of February, 1945, as a public educational institution. The jury found the defendant Trustees of the Ohio Wesleyan University, to be the same Ohio Wesleyan University of Delaware, Ohio, as designated in the will of Carroll P. Marriott.

Upon the return of the jury's verdict, the court entered judgment to the effect that the defendant, Board of National Missions of the Presbyterian Church in the United States of America, is the owner and entitled to the principal and accumulated income of the Trust Estate of Carroll P. Marriott, held by the Wachovia Bank & Trust Company, Trustee, under the last will and testament of said testator; such funds to be held by the Board of National Missions of the Presbyterian Church in the United States of America, for the benefit of and added to the present endowment of a school owned and operated by it, to wit: Asheville Farm School, and directed the Trustee to pay over to said Board the principal and accumulated income of said Trust Estate.

The defendant, Trustees of the Ohio Wesleyan University, appealed to the Supreme Court, assigning error.

*Williams, Cocke & Williams for appellee.*
*Fred L. Rosemond and Smathers & Meekins for appellant.*

DENNY, J. There is ample evidence in this record to support the verdict of the jury, and while the findings of the jury are helpful in establishing the facts relative to the present status of the Asheville Normal and Associated Schools, the challenge of the appellant to the correctness of the judgment entered below, makes it necessary to con-

sider the legal effect of those findings in the light of the provisions contained in the testator's will. The appellant assails the judgment below on the ground that notwithstanding the verdict of the jury it does not follow necessarily that the Asheville Normal and Associated Schools, as an institution, had not ceased to exist on 9 February, 1945, within the meaning of the testator's will. Therefore, the exception to the judgment entered below presents for determination as a matter of law, whether or not the continued operation of the Asheville Farm School, along with other educational enterprises by the Board of National Missions of the Presbyterian Church in the United States of America, under the name of Warren Wilson College, on the campus of the Asheville Farm School, constitutes such existence, as a public educational institution, as will meet the condition imposed in the testator's will, notwithstanding the discontinuance of the Asheville Normal, the Home School and the Pease House, in the City of Asheville.

At the time of the execution of the will of Carroll P. Marriott, as well as at the time of his death in 1922, the Woman's Board of the Presbyterian Church in the United States, and later the defendant Board of National Missions of the same church, owned and operated the Asheville Normal, Home School, Pease House and Asheville Farm School. These unincorporated schools were popularly known as the Asheville Normal and Associated Schools. The program of the local units was adapted to meet specific local conditions. The curriculum was changed from time to time in the local units as local conditions changed. It is apparent that with the development of our public school system in North Carolina, it became unnecessary and impractical for the Board of National Missions to maintain the units of the Asheville Normal and Associated Schools in the City of Asheville. But we cannot say, in view of the evidence disclosed by the record and the findings of the jury in the trial below, that the Asheville Farm School is not and was not, on 9 February, 1945, engaged in a program of service in the field of Christian education for the benefit of the youth of the mountain area, substantially the same as that in which it was engaged at the time of the execution of the testator's will.

It appears from the evidence that when the College Department of the Asheville Normal and Teachers' College was dropped, the rest of the work was transferred to the Asheville Farm School, including the library and records of the Asheville Normal and Teachers' College. Likewise the Dorland Bell School for Girls was moved from Madison County, N. C., to the campus of the Asheville Farm School. The Asheville Farm School is being operated as a part of what is now known as Warren Wilson College. The courses given are the regular high school and pre-high school work, two years of college work, and in addition to the regular educational courses, there are vocational courses in agriculture,

mechanics, home making, printing and various other types of vocational training.

It is a rule of construction that the intent of the testator as expressed by him, is to be ascertained from the four corners of the will, and must control, unless contrary to some rule of law or at variance with public policy. *Holland v. Smith,* 224 N. C., 255, 29 S. E. (2d), 888; *Williams v. Rand,* 223 N. C., 734, 28 S. E. (2d), 247; *Culbreth v. Caison,* 220 N. C., 717, 18 S. E. (2d), 136; *Smith v. Mears,* 218 N. C., 193, 12 S. E. (2d), 649; *Williamson v. Cox,* 218 N. C., 177, 10 S. E. (2d), 662; *Heyer v. Bulluck,* 210 N. C., 321, 186 S. E., 356. However, we do not think it is violative of the rule of construction in the case before us, to consider the circumstances surrounding the testator and his relationship to the beneficiaries, in order that the language may be interpreted from the testator's viewpoint as an aid in ascertaining his intent. *Heyer v. Bulluck, supra; Benevolent Society v. Orrell,* 195 N. C., 405, 142 S. E., 493; *Tilley v. Ellis,* 119 N. C., 233, 26 S. E., 29.

Carroll P. Marriott was a student at the Ohio Wesleyan University at Delaware, Ohio, and graduated therefrom with an A.B. degree in the class of 1903. He was assistant in the Department of Chemistry during the last two years of his college course. Sometime after graduation he came to North Carolina for his health. He first lived in Asheville and moved from there to Tryon in 1908, where he continued to reside until his death in 1922.

What was the motive that led the testator to make the Asheville Normal and Associated Schools the first beneficiary of the residue of his estate? There is certainly nothing to indicate that the bequest was made for the primary benefit of the Woman's Board of Home Missions of the Presbyterian Church in the United States of America, a New York corporation. Neither can it be said that his long association with and attachment for the Presbyterian Church was the inducement for making the bequest. He was not a Presbyterian, but a Methodist. He was familiar, however, with the program of Christian education which this church organization was maintaining. He visited the Asheville campus of the Asheville Normal and Associated Schools on many occasions. He was familiar with the educational program of the organization operating these schools and knew that it was adapted to the peculiar needs of the youth in the mountain area of North Carolina. We think his real purpose in making this bequest was to aid in maintaining this program of Christian education for the benefit of the youth in the mountain area of Western North Carolina. And, so long as any one of the schools which composed the group popularly known as the Asheville Normal and Associated Schools continues to be operated "as a public educational institution," then the Asheville Normal and Associated Schools will continue to exist within the meaning and intent of the testator's will.

We think the evidence supports the contentions of the appellee, the Board of National Missions, that the educational program at Warren Wilson College offers substantially the same educational opportunities as those offered by the Asheville Normal and Associated Schools in 1921 and 1922. The mere fact that conditions have changed to such an extent that the Board of National Missions of the Presbyterian Church in the United States of America has seen fit to reorganize its educational program in the Asheville area, and to carry on all its work on the campus of one of the Associated Schools, will not work a forfeiture of the testator's bequest.

In view of the facts set forth herein and the findings of the jury, we hold as a matter of law, that the Asheville Normal and Associated Schools had not ceased to exist as a public educational institution on 9 February, 1945, within the meaning of the testamentary words of the testator, and the Board of National Missions of the Presbyterian Church in the United States of America is entitled to the trust fund to be administered in accordance with the decree of the court below. *Curtis v. First Church in Charlestown,* 285 Mass., 73, 188 N. E., 631; *Soldiers' Orphans' Home v. Wolff,* 10 Mo. App., 596; *Boston Safe Deposit & Trust Co. v. Stratton,* 259 Mass., 465, 156 N. E., 885; *Reed v. Fogg,* 248 Mass., 336, 143 N. E., 47; *West v. Lee,* 224 N. C., 79, 29 S. E. (2d), 31; *In re Jordan's Estate,* 310 Penn., 401, 165 A., 652; *Thatcher v. Lewis,* 335 Mo., 1130, 76 S. W. (2d), 677; *Lewis v. Gilliard,* 61 Fla., 819, 56 So., 281.

In the case of *Curtis v. First Church in Charlestown, supra,* it appears from the opinion of the Court that the testator died and her will was duly probated in 1904. The residue of her estate was given to trustees upon trusts which had terminated. Upon the termination of the trusts the residue was to be divided among four institutions. The controversy related to the institution entitled to recover one of the shares. The testatrix referred to her church by several different names in her will, among them "First Church in Charlestown" and "First Parish Church." The will contained the following clause: "Of all sums herein given from the Trust Fund to said First Parish Church, the income only thereof is to be used for paying its pastor's salary and for ringing the chime of bells on said church, in such proportions as its church officers may determine, and in case said church shall be discontinued or cease to maintain public worship as a separate and distinct organization, then said sums shall vest in and be paid to the Abbots Academy at Andover, Massachusetts." It appears that "By St. 1913, C. 84, the voluntary religious association became incorporated under the name of the First Church in Charlestown, and the Winthrop Church, a religious corporation, was absorbed in said corporation and conveyed all its property to said corporation. Since then the First Church of Charlestown, which

was the church in which the testatrix was active, had carried on its religious services and activities in an edifice formerly owned by the said Winthrop Church. That edifice, although on a different street, is in the same general locality as was the edifice in which the said First Church in Charlestown formerly worshipped and carried on its work." The Court held that the church, notwithstanding its incorporation and absorption of the Winthrop Church in the corporation and the change of its place of worship, had not been "discontinued," nor had it ceased "to maintain public worship as a separate and distinct organization," within the meaning of the testamentary words.

In the case of *Boston Safe Deposit & Trust Co. v. Stratton, supra,* the testator gave to trustees certain funds for the benefit of New Salem Academy, and directed that the trustees invest the funds and pay the income therefrom to said institution "so long as it continues to be an institution of learning . . . but whenever it ceases to be an institution of learning I direct said trustees to pay said principal sum . . . to my heirs at law." The testator died in 1887. The trustees of the Academy were incorporated and operated the school until 1900 or 1901, when they gave over to the Town of New Salem the entire control of the school, to be exercised by the school committee of the town. The trustees have continued to own the buildings and the real estate, while the school has been conducted in the buildings under the "exclusive management of the school committee, although the trustees have advised with the school committee." Certain boarding students are still accepted by the trustees of the Academy, and the trustees maintain the buildings and receive an annual rental of $500.00 for the use of the buildings, but the trustees pay tuition to the town for their boarding students and make other donations from time to time to the town for the benefit of the school. The Court held "The New Salem Academy has not ceased to be, but on the contrary continues to be an institution of learning, as those words are used in the will of the testator."

The holding of the Supreme Court of Missouri, in *Thatcher v. Lewis, supra,* is succinctly stated in the syllabus of the case, as follows: "Under will establishing trust fund for relief of 'all poor immigrants and travellers coming to St. Louis on their way, *bona fide,* to settle in the West,' evidence *held* to support finding that purposes of trust had not wholly or substantially failed, precluding reversion of the trust fund by operation of law to heirs of testator."

It has been held that the change of the name as well as the termination of certain activities of the beneficiary, does not terminate or forfeit a trust. *Lewis v. Gilliard, supra; Soldiers' Orphans' Home v. Wolff, supra; Re Waring* (1907), 1 Ch. (Eng.), 166, 91 A. L. R., Anno. p. 843.

Moreover, the fact that the Asheville Normal and Associated Schools, as an institution was not incorporated, will not defeat the trust. It is

the general rule that where a bequest is made to an unincorporated asso-
ciation, school, department or organization, by its popular name, if such
association, school, department or organization is operated under a parent
organization legally capable of taking and handling property, the be-
quest will be upheld as a gift in trust to such parent organization, for
the benefit of the designated beneficiary. 69 C. J., 228; 10 Am. Jur.,
611; *Keith v. Scales,* 124 N. C., 497, 32 S. E., 809; *Pope v. Hinckley,*
219 Mass., 323, 95 N. E., 798; *Kernochan v. Farmers' Loan & Trust Co.,*
175 N. Y. S., 831, 126 N. E., 912; *Holloway v. Institute of Mission
Helpers,* 119 Md., 667, 87 A., 269; *Hutton v. St. Paul Brotherhood of
People's Church,* 20 Ch. Del., 413, 178 A., 584; *In re Stuart's Estate,*
184 Iowa, 165, 168 N. W., 779; *In re Burger's Estate,* 205 N. Y., 220;
*In re Rogers' Estate,* 258 N. Y. S., 534; *In re Winslow's Will,* 53
N. Y. S. (2d), 220; *In re Lemcke's Will,* 53 N. Y. S., 253; *Horne v.
Nashville Trust Co.,* 11 Tenn., 225.

The right of the appellant to recover this trust fund in the event the
Asheville Farm School ceases to exist as a public educational institution,
within the meaning of the provisions contained in the will of the testator,
is not presented for consideration and determination on this appeal, and
we express no opinion thereon.

We have carefully examined the other exceptions and assignments of
error, and in the trial below we find no prejudicial error.

No error.